# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JIMMY SELLERS,                                  :
          Plaintiff,                      :         CIVIL ACTION NO.
                                         :         16-CV-236 (JCH)
   v.                                           :
                                         :
FIRST STUDENT, INC.,                            :         OCTOBER 28, 2016
          Defendant.                     :

## RULING RE:  DEFENDANT'S MOTION TO DISMISS (DOC. NO. 20)

## I.    INTRODUCTION

This is an action filed by plaintiff Jimmy Sellers ("Sellers") against his former employer, defendant First Student, Inc. ("First Student").  See Second Am. Compl. ("Complaint") (Doc. No. 14) ¶¶ 1–2, 7.  Sellers's Complaint alleges employment discrimination in violation of section 2000e of title 42 of the United States Code ("Count 1"), section 1981 of title 42 of the United States Code ("Count 2"), section 46a-58 of the Connecticut General Statutes ("Count 3"), and section 46a-60 of the Connecticut General Statutes ("Count 4"), and further alleges several instances of defamation ("Count 5").  See Complaint ¶¶ 34–44.[1]  Pursuant to Federal Rule of Civil Procedure 12(b)(6), First Student has filed a Motion to Dismiss all five of Sellers's claims now pending before this court.  See generally Def.'s Mot. to Dismiss ("Motion") (Doc. No. 20).

---

[1] The court notes that Sellers amended his complaint a second time, without the court's leave and, it appears, without the opposing party's written consent.  See Fed. R. Civ. P. 15(a)(2).  However, because First Student's Motion to Dismiss, see generally Def.'s Mot. to Dismiss (Doc. No. 20), and accompanying memorandum, see generally Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Defendant's Memorandum in Support") (Doc. No. 21), address the Second Amended Complaint, the court will treat the Second Amended Complaint as the operative complaint, and this Ruling will address that pleading.

For the reasons set forth below, First Student's motion is **GRANTED** with respect to Counts 1 and 2, and the court declines to exercise supplemental jurisdiction over Sellers's remaining state law claims, Counts 3, 4, and 5.

## II.   FACTS[2]

Sellers is a sixty-one year-old, "black and African American" resident of Norwalk, Connecticut.  Complaint ¶ 1.  For thirty-three years—from 1980 until his May 29, 2013 termination—Sellers was employed by the predecessors of First Student, a school bus company, and eventually by First Student itself.  Id. ¶ 7.  Sellers maintained "an exemplary work record," and was disciplined just "3 to 4 times . . . [and never] for any type of threatening or aggressive behavior, until the end of his employment."  Id. ¶ 8.

However, beginning in approximately April 2013, several of First Student's employees began implementing a plan to build a record against Sellers, so as to eventually terminate his employment because of his "color, race and age."  Id. ¶ 9; see also id. ¶¶ 15, 17, 21, 23, 28–30. These employees also hatched and implemented similar plans against several of Sellers's coworkers. See id. ¶ 10.

On April 4, 2013, April Williams ("Williams"), First Student's Interim Safety manager, refused to help Sellers renew his Commercial Driver License ("CDL"), despite the fact that doing so was one of her duties.  Id. ¶ 11.  At no point did Sellers direct any

---

[2] In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in the plaintiff's favor."  Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015) (citing Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013)). This description of the facts is therefore derived from the Second Amended Complaint and limited to those necessary to rule on the Motion.

inappropriate language at Williams.  Id. ¶ 15.  Williams is "African American and [was] 53 years old."  Id. ¶ 11.[3]

Immediately following this "falling out," id., Sellers complained to Location Manager Elaine Reynolds ("Reynolds") that Williams had acted unprofessionally in refusing to help him renew his CDL, id. ¶ 12.  Reynolds was "Caucasian and 57 years old."  Id. ¶ 12.  At some point, Sellers left Reynolds's office to retrieve a form related to renewing his CDL. Id.  Reynolds took the opportunity, while Sellers was gone, to speak with Williams about what had taken place.  See id. ¶ 13.  When Sellers returned with the form, Reynolds told Sellers that Williams claimed he had used foul language during their earlier interaction.  See id.  Sellers insisted he had not done so, and left the office, thinking the situation was resolved.  Id. ¶ 14.

Sellers did not hear anything more about the events of April 4, 2013, until Reynolds wrote Sellers a letter on April 10, 2013.  Id. ¶ 16.  Reynolds claimed that Sellers "threw several papers on [her] desk & made a comment about how [he] figured [ ] out" how to renew his CDL himself.  Id. The letter also asserted that Sellers "[was] not very respectful toward" Reynolds.  Id.

Later that same day, Sellers's immediate supervisor Stephen Brust ("Brust") called a meeting to discuss Williams's and Reynolds's claims.  Id. ¶ 18.  Brust is "Caucasian, [and was] Age: 41."  Id.  In addition to Brust and Sellers, Reynolds and the

---

[3] It is somewhat unclear from the Complaint whether the listed ages of the First Student employees reflect their ages in 2013 or at the time this suit was initiated.  In this Ruling, the court has assumed that the Complaint states their ages in April and May 2013.  However, because Sellers has not properly pled claims for age discrimination, see infra at 6, the distinction has no effect on the ultimate disposition of First Student's Motion to Dismiss.  If Sellers chooses to replead his age discrimination claims against First Student, the court suggests he make clear the ages of all involved parties in April and May 2013.

union steward attended the meeting.  Presiding over the meeting, Brust began by informing Sellers that Williams and Reynolds claimed Sellers acted inappropriately on April 4.  Id. ¶ 20.  Brust then brought forward a document, containing Williams's and Reynolds's allegations, and asked Sellers to sign it.  Id.  Sellers refused, telling Brust that he disputed the allegations contained in the letter, and therefore would not sign it. Id.  In response, "since [Sellers] was not going to sign it," Brust informed Sellers that he was suspended until further notice.  Id. ¶ 21.  Although Sellers asked Brust for his suspension letter, Brust told him to leave right away and that he would receive the letter later.  Id.  Sellers never received the suspension letter.  Id.

More than two weeks later, on April 29, 2014, First Student "issued a final warning letter."  Id. ¶ 23.  The letter articulated First Student's position that Sellers would have to "complete anger management classes, serve a three day suspension and acknowledge the receipt of a final warning letter," before he would be reinstated.  Id.

Immediately after the suspension was announced, Sellers's union, Teamsters, Local 191, began discussions with First Student in an effort to lessen the discipline to which Sellers would be subject.  Id. ¶ 24.  On May 17, 2013, Robert Flynn ("Flynn"), the Business Agent for Sellers's union, informed Reynolds that Sellers would not comply with the conditions articulated in the April 29 letter.  Id. ¶ 25.  Four days later, Flynn expressed the union's position—"that the termination of the Plaintiff's employment had been prompted by the Plaintiff's refusal to accept the requirements set forth in the April 29, 2013 letter"—to Vincent Cappiello ("Cappiello"), First Student's Area General Manager.  Id. ¶ 26.

On May 29, 2013, Sellers was officially terminated, id. ¶ 27; he had been
suspended from April 10 until his termination, id. ¶ 22.  The termination letter Sellers
received from Cappiello "stated . . . that Plaintiff's refusal to accept the requirements
sets [sic] forth in the April 29, 2013 letter" was the reason his employment was
terminated.  Id. ¶ 27.

Meanwhile, also in 2013, two of Sellers's African American coworkers were
terminated.  See id. ¶ 31–32.  Morris Asbury, approximately 70 years old, was employed
by First Student beginning in 1984.  Id. ¶ 31.  He was terminated for "the pre-textual
reason that he did not put a steering wheel cover on one of the buses."  Id.  Similarly,
Max Chervil, around 55 years old, was employed by First Student from 2000 until 2013,
when he was terminated and "given the pre-textual reason that he was not wearing
safety glasses (on his day off)."  Id. ¶ 32.  Other First Student employees were
terminated at around the same time based on their age, race, and color.  Id. ¶ 33.

## III.     LEGAL STANDARDS

To survive a motion to dismiss, the complaint must allege sufficient facts such
that, if accepted as true, they would state a plausible claim for relief.  Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009).  "[A]ll factual allegations in the complaint are accepted as
true and all inferences are drawn in the plaintiff's favor."  Littlejohn v. City of New York,
795 F.3d 297, 306 (2d Cir. 2015) (citing Ofori-Tenkorang v. Am. Int'l Grp., Inc., 460 F.3d
296, 300 (2d Cir. 2006)).  However, "[t]hreadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at
678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Though the
plausibility requirement does not demand a "probability" that the non-moving party is

entitled to relief, it demands "more than a sheer possibility that a defendant has acted

unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of

"entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).

## IV.    DISCUSSION

### A.    Counts 1 and 2: Age Discrimination

As a preliminary matter, the court addresses First Student's Motion to Dismiss

Sellers's federal age discrimination claims. See Defendant's Memorandum in Support

at 10–11.  Although he has not formally withdrawn his purported Title VII age

discrimination claim, Sellers concedes that federal age discrimination claims must be

brought pursuant to the Age Discrimination in Employment Act ("ADEA"), see Mem. in

Supp. of Obj. to Mot. to Dismiss ("Plaintiff's Memorandum in Support") (Doc. No. 23) at

11, rather than pursuant to Title VII or Section 1981, see Complaint ¶¶ 34–35.  The

court therefore dismisses the federal age discrimination claims without prejudice.[4]

### B.    Counts 1 and 2: Disparate Treatment

Sellers alleges that First Student violated Title VII and Section 1981 by engaging

in disparate treatment based on his "color [and] race."  Complaint ¶¶ 34–35. As a

general matter, Title VII claims are analyzed using the familiar, burden-shifting

framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), see

---

[4] The Supreme Court's decision in Johnson v. City of Shelby, Miss., 145 S. Ct. 346 (2014) (per curiam), does not mandate a contrary ruling.  There, the Court reversed a grant of summary judgment, when the plaintiffs failed to invoke the proper statutory grounds for their cause of action.  See Johnson, 145 S. Ct. at 346.  The remedy the Court afforded was remand with instructions that the plaintiffs should be permitted to amend their complaint. Id. at 347.  Here, though the court dismisses Sellers's federal age discrimination claims, it offers him the opportunity to replead, see infra at 14, just as the Supreme Court did in Johnson.

Littlejohn, 795 F.3d at 307, as are Section 1981 claims, see Gant ex rel. Gant v.

Wallingford Bd. Of Educ., 195 F.3d 134, 146 (2d Cir. 1999); Doe v. Columbia Univ.,

Nos. 15-1536 (Lead), 15-1661 (XAP), 2016 WL 4056034, at *7 n.9 (2d Cir. July 29,

2016).  To prove his claim, the plaintiff must establish a prima facie case of

discrimination based on race at the first step of this framework.  He must show "that he

(1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was

discharged; and that (4) his discharge occurred under circumstances giving rise to an

inference of discrimination on the basis of his membership in the protected class."

Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

However, a plaintiff need not plead a prima facie case of discrimination to survive

a motion to dismiss.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002).  Though

there was some uncertainty in the aftermath of Iqbal regarding the extent to which

Swierkiewicz remained good law—as the latter was decided under the more forgiving

pleading standard set out in Conley v. Gibson, 355 U.S. 41 (1957)—the Second Circuit

has made clear that:

> "Iqbal's requirement [of facts sufficient to support plausibility] applies to Title VII
> complaints of employment discrimination, but does not affect the benefit to
> plaintiffs pronounced in the McDonnell Douglas quartet.  To the same extent that
> the McDonnell Douglas temporary presumption reduces the facts a plaintiff would
> need to show to defeat a motion for summary judgment prior to the defendant's
> furnishing of a non-discriminatory motivation, that presumption also reduces the
> facts needed to be pleaded under Iqbal."

Littlejohn, 795 F.3d at 310.[5]  Therefore, in the absence of direct evidence of

discrimination, a plaintiff must allege facts that "plausibly support[ ] that the plaintiff is a

---

[5] The court would expect plaintiff's counsel to be aware of the sea change heralded by Iqbal and
Twombly, which together overruled Conley.  See Twombly, 550 U.S. at 553 (expressing view that
Conley's "no set of facts" standard "has earned its retirement").  He is advised to refrain from relying on

member of a protected class, was qualified, suffered an adverse employment action, and [that offer] at least minimal support for the proposition that the employer was motivated by discriminatory intent."  Id. at 311.

As to the last prong, the facts pled need only give "plausible support to a minimal inference of discriminatory motivation."  Id.  The Second Circuit has identified several ways in which plaintiffs may "alleg[e] facts that . . . indirectly show discrimination by giving rise to a plausible inference of discrimination," if they cannot allege facts that do so directly.  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).  These allegations could include:

> "the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge; or the timing of the discharge."

Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) (citations omitted); see also Vogel v. CA, Inc., 44 F. Supp. 3d 207, 222 (D. Conn. 2014).  Additionally, "[t]he fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the [ ] analysis, including at the pleading stage."  Littlejohn, 795 F.3d at 313 (citing Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001)).

Turning to the case at hand, First Student insists that Sellers "has not alleged – and cannot allege – sufficient facts that would plausibly support the fourth element of his prima facie case," see Defendant's Memorandum in Support at 8, agreeing, for the sake

---

that standard, see Plaintiff's Memorandum in Support at 9, in future submissions to this court, see Fed. R. Civ. P. 11(b)(2).

of this argument, that Sellers is a member of a protected class, was qualified for his position, and suffered an adverse employment action, see Oral Arg., Oct. 14, 2016, Tr. at 3.  Thus, the only point of contention between the parties as to Sellers's Title VII and Section 1981 claims is whether he has pled facts providing even "minimal support for the proposition that the employer was motivated by discriminatory intent."  Littlejohn, 795 F.3d at 311.  The court concludes that he has not.

Throughout the Complaint and Plaintiff's Memorandum in Support, Sellers insists that First Student's employees "spread[ ] falsehoods about him."  See, e.g., Plaintiff's Memorandum in Support at 14.  This may be so and, indeed, when ruling on the Motion, the court is required to regard Sellers's version of events as true.  However, Sellers's Complaint falls short in carrying even his "de minimis" burden of pleading facts that give rise to an inference of discrimination.  See Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998) (recognizing that pleading requirements in discrimination cases "are very lenient").  Notwithstanding repeated insistences that First Student's reasons for terminating him were pretextual, see Complaint ¶¶ 9, 15, 17, 21, 23, 28–30, and occasional invocations of other African-American employees who were also fired, see, e.g., id. ¶ 10, Sellers does not allege facts that evince any link between his race and his termination.

The touchstone of Sellers's allegations is that, despite his "exemplary work record and [minimal] disciplinary record," id. ¶ 8, First Student's employees "implemented a deliberate plan of action to build a record against [him] so as to eventually terminate him on the basis of both [sic] his color, race and age," id. ¶ 9.  The employees, Sellers's argument goes, repeatedly concocted falsehoods about him, so

that they could fire him when, in reality, their underlying motivation was Sellers's race.

See, e.g., id. ¶ 14 ("The Plaintiff never used any inappropriate language with Ms.

Williams and Ms. Reynolds [sic] assertion that he did was not true and was a fabrication

and was the beginning of a plan to build a case to terminate the Plaintiff on the basis of

his color, race and age.").  Yet Sellers's Second Amended Complaint fails to plead any

facts that would tend to suggest a connection between any falsehoods told about him

and his race.[6]

Where courts have found the sequence of events preceding an employee's firing

gave rise to an inference of discrimination, there have been much more explicit

discriminatory overtones in the employer's actions than Sellers pleads here.  See

Ostrowski v. Atl. Mut. Ins. Cos., 968 F.2d 174, 183 (2d Cir. 1992) (noting, inter alia, in

age discrimination case, "criticism of [plaintiff] on the ground that the employee [plaintiff

hired] was too old" and comment that "a 64-year-old cannot be superior").  Courts

similarly require a clearer indication than Sellers pleads here that the timing of the

adverse employment action gives rise to the requisite inference of discrimination.  See

Dister v. Cont'l Grp., 859 F.2d 1108, 1115 (2d Cir. 1988) (applying McDonnell Douglas

framework and noting plaintiff's "discharge four months and seven days before his

[employee benefit plan] rights were to vest and the resulting substantial cost savings to"

defendant).

---

[6] Though not essential to the outcome of this Ruling, the court notes the fairly similar ages of
Sellers, Williams, and Reynolds.  See Complaint ¶ 6, 11–12.  If Sellers chooses to replead his age
discrimination claims, the court suggests he plead facts that would plausibly support his belief that he was
fired on account of his age.

Nor has Sellers pled facts suggesting that First Student continued soliciting applications from people with similar qualifications after his termination, see Meiri v. Dacon, 759 F.2d 989, 995–96 (2d Cir. 1985), criticized his job performance or other employees in a racially offensive manner, see Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987), treated employees of other races more favorably, Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996) (citing Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1993)), or replaced him with an employee who was not African-American, Littlejohn, 795 F.3d at 313, so as to allege a sufficient link between his race and the adverse employment action against him.

Admittedly, these factors that give rise to an inference of discrimination are not exclusive. Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009), superseded on other grounds by N.Y.C. Local L. No. 85. Yet these examples of the kinds of facts sufficient to raise an inference of discrimination make clear that Sellers's bald claims that First Student's reasons for firing him were pretextual are insufficient: in the absence of direct evidence of discrimination, Sellers must allege some link between his race and his firing.

Moreover, to the extent Sellers relies on the cases of two other African-American employees who were fired in 2013 for allegedly minor infractions, see Complaint at ¶¶ 30–32, these examples are insufficient to raise the requisite inference of discrimination. Although the Second Circuit has repeatedly recognized that plaintiffs may point to disparate treatment of similarly situated employees in making out an employment discrimination claim, see, e.g., McGuinness v. Lincoln Hall, 263 F.3d 49,

54 (2d Cir. 2001) (discussing <u>Shumway v. United Parcel Serv.</u>, 118 F.3d 60 (2d Cir. 1997)), Sellers points instead to similar treatment of others within his protected group.

Yet, without more, termination of multiple employees who all fall within the same protected group does not give rise even to a minimal inference of discrimination.  <u>Cf.</u> <u>Arciuolo v. Tomtec, Inc.</u>, No. 3:14-cv-00624 (JAM), 2015 WL 6384598, at *3 (D. Conn. Oct. 22, 2015) ("Ultimately, plaintiffs' age-discrimination claim relies on one actual fact only–that the plaintiffs were older than 40 when they lost their jobs, and <u>this fact alone plainly does not suffice</u> for an age-discrimination claim." (emphasis added)).  In the absence of any information about First Student's overall (local or national[7]) employee pool or any discussion of its hiring or firing history outside of the references to Sellers and his two former coworkers, there is no basis to plausibly infer discrimination from the fact that three African-American employees were terminated sometime in 2013.  <u>Cf.</u> <u>Burgis v. N.Y.C. Dep't of Sanitation</u>, 798 F.3d 63, 69 (2d Cir. 2015) (requiring, to show discriminatory intent, that statistical evidence be "significant [not only] in the mathematical sense, but [ ] must also be of a level that makes other plausible non-discriminatory explanations very unlikely"); <u>Ennis v. Sonitrol Mgmt. Corp.</u>, No. 02-CV-9070 (TPG), 2006 WL 177173, at *14 (S.D.N.Y. Jan. 25, 2006) (granting summary judgment where proffered sample of fired employees was "simply too small a basis for generalization").

---

[7] It is unclear from the Complaint whether the two other fired African-American workers were employed by First Student in the same city, county, or state as Sellers.  <u>See</u> Complaint ¶¶ 31–32. Depending on the level of generality at which Sellers pleads his claim, the relevant allegations as to First Student's employee composition would likely be different.

Case 3:16-cv-00236-JCH   Document 30   Filed 10/28/16   Page 13 of 14

Without such facts being pled, Sellers's Complaint does not state a claim pursuant to Title VII or Section 1981 upon which relief can be granted.  Therefore, First Student's Motion to Dismiss Counts 1 and 2 is granted.

C.    Counts 3, 4, and 5: Connecticut State Law Claims

Having dismissed all the federal claims in the Complaint, the court must decide whether to exercise supplemental jurisdiction over the remaining state law claims.[8] Under section 1367(c)(3) of title 28 of the United States Code, the court may "decline to exercise supplemental jurisdiction over a [state law] claim" when it "has dismissed all claims over which it has original jurisdiction."  Indeed, the Second Circuit has repeatedly said that "if a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well.'"  Brzak v. United Nations, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008)).  Prior decisions in this district have heeded this exhortation, see, e.g., Bellamy v. Gen. Dynamics Corp., No. 3:10cv1219 (MRK), 2012 WL 1987171, at *7 (D. Conn. June 4, 2012); Kelly v. Signet Star Re, LLC, 971 F. Supp. 2d 237, 254 (D. Conn. 2013),

---

[8] Here, the court notes that Sellers has withdrawn Count 3, which alleges a violation of section 46a-58 of the Connecticut General Statutes.

and so too does the court here.  Therefore, the court declines to exercise jurisdiction over Counts 4 and 5, and Count 3 is withdrawn.

## V.      CONCLUSION

First Student's Motion to Dismiss (Doc. No. 20) is **GRANTED** with respect to Counts 1 and 2, Sellers's federal claims.  Sellers withdrew Count 3, and the court declines to exercise supplemental jurisdiction over Counts 4 and 5, Sellers's remaining state law claims. The Complaint is therefore dismissed in its entirety.

The court allows Sellers leave to replead his claims against First Student, if he has a basis to do so consistent with Federal Rule of Civil Procedure 11 and consistent with this Ruling, no later than 14 days from the entry of this Ruling.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 28th day of October, 2016.


__/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge